UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

<u>**NOT FOR PUBLICATION**</u>

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 11-2731 (CGM) |
| v. | |
| TRINCASTAR CORPORATION, | |
| Defendant. | |

**MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO DISMISS**

<u>**A P P E A R A N C E S**</u>:

*Special Counsel to Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and for the Chapter 7 Estate of Bernard L. Madoff*
WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, New York 10019
By:     Howard L. Simon
          Robert J. Luddy
          Kim M. Longo
          Alex Jonatowski

*DRAFT*

*Counsel for Defendant Trincastar Corporation*
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, New York 10036
By:    Richard Levin
        Carl Wedoff
        Vincent E. Lazar

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Defendant's, Trincastar Corporation ("Trincastar" or "Defendant"), motion to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover subsequent transfers allegedly consisting of BLMIS customer property.  Defendant seeks dismissal for lack of personal jurisdiction. Defendant also asserts the "safe harbor" defense under Bankruptcy Code Section 546(e).  For the reasons set forth herein, the motion to dismiss is denied in its entirety.

**Jurisdiction**

This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).  This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§

1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and

the Amended Standing Order of Reference, dated January 31, 2012.  In addition, the District

Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order,

Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this

Court has jurisdiction under the latter provision.  Personal jurisdiction has been contested by this

Defendant and will be discussed *infra*.

## Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its

SIPA proceeding.  *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir.

2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on September 22, 2011.  (Compl., ECF[1] No. 1).  Via

the complaint ("Complaint"), the Trustee seeks to recover approximately $13,311,800 in

subsequent transfers made to Trincastar.  (*Id.* ¶ 2).  The subsequent transfers were derived from

investments with BLMIS made by Fairfield Sentry Limited ("Fairfield Sentry").  (*Id.*)  Fairfield

Sentry is referred to as a "feeder fund" because the intention of the fund was to invest in BLMIS.

(*Id.* ¶ 2).  Trincastar is a corporation with a principle point of contact at Credit Suisse Trust,

which is located in Switzerland.  (*Id.* ¶ 20).

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield

Sentry and related defendants to avoid and recover fraudulent transfers of customer property in

the amount of approximately $3 billion.  (*Id.* ¶ 34).  In 2011, the Trustee settled with Fairfield

Sentry.  (*Id.* ¶ 38).  As part of the settlement, Fairfield Sentry consented to a judgment in the

amount of $3.054 billion (Consent J., 09-01239-cgm, ECF No. 109) but repaid only $70 million

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary
proceeding 11-02731-cgm.

*DRAFT*

to the BLMIS customer property estate.  (Compl. ¶ 38).  The Trustee then commenced a number

of adversary proceedings against subsequent transferees, like Defendant, to recover the

approximately $3 billion in missing customer property.

In its motion to dismiss, Defendant argues that the Trustee has failed to plead personal

jurisdiction.  Defendant further argues that the Court should dismiss the complaint due to the

Safe Harbor under Bankruptcy Code Section 546(e).  The Trustee opposes the motion to dismiss.

For the reasons set forth herein, the motion to dismiss is denied in its entirety.

## <u>Discussion</u>

**Personal Jurisdiction**

Defendant objects to the Trustee's assertion of personal jurisdiction.  (Mem. L. ¶ 5-10,

ECF No. 104).  In the Complaint, the Trustee argues that Defendant purposefully availed itself to

the laws of the United States and New York.  (Compl. ¶¶ 5–6).

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2)

of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that

jurisdiction exists."  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)).  A trial court has

considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2).

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).  "'It may

determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the

motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Dorchester Fin.

Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank,

N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP Paribas S.A.* (*In re

BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

*DRAFT*

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin.*, 722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565 (Bankr. S.D.N.Y. 2021) (same).    In this case, the Trustee has alleged legally sufficient allegations of jurisdiction simply by stating that Defendant Trincastar "knowingly direct[ed] funds to be invested with New York-based BLMIS through Fairfield Sentry" and "knowingly received transfers of Customer Property from BLMIS." (Compl. ¶ 5).  This allegation alone is sufficient to establish a prima facie showing of jurisdiction over Defendant in the pre-discovery stage of litigation.  At the pre-discovery stage, the allegations need not be factually supported. *See Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013) (explaining that an averment of facts is necessary only after discovery).  That being stated, this was not the only allegation made by the Trustee.

In order to be subjected to personal jurisdiction in the United States, due process requires that a defendant have sufficient minimum contacts with the forum in which defendant is sued "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501 (Bankr. S.D.N.Y. 2012), 480 B.R. 501, 516 (Bankr. S.D.N.Y. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The pleadings and affidavits are to be construed "'in the light most favorable to the plaintiffs, resolving all doubts in their favor.'" *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018).

*DRAFT*

> The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant.   First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State. Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct.   Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

**Purposeful Availment**

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018).  "Although a defendant's contacts with the forum state may be intertwined with its transactions or interactions with the plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction."  *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).  "It is insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific jurisdiction." *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012).

Defendant argues that the Trustee has not alleged that it has sufficient contacts with New York.  (Mem. L. ¶ 6–7, ECF No. 104).  In the Complaint, the Trustee alleges that Defendant Trincastar "knowingly direct[ed] funds to be invested with New York-based BLMIS through

*DRAFT*

Fairfield Sentry" and "knowingly received transfers of customer property from BLMIS."
(Compl. ¶ 5, ECF No. 1). The Trustee has also alleged that Fairfield Sentry invested almost all
of its assets in BLMIS. *See* 09-01239 Compl. ¶ 228 ("Under Fairfield Sentry's offering
memorandum, the fund's investment manager was required to invest no less than 95% of the
fund's assets through BLMIS.") (adopted by reference, at paragraph 35, of this Complaint).
Additionally, the Trustee has alleged that Defendant "entered into a subscription agreement with
Fairfield Sentry under which Trincastar submitted to New York jurisdiction, sent a copy of the
agreement to FGG's New York City office, and wired funds to Fairfield Sentry through a bank in
New York" and thus "derived significant revenue from New York and maintained minimum
contacts and/or general business contacts with the United States and New York in connection
with the claims alleged herein." (Compl. ¶ 5).

In response to the motion to dismiss, the Trustee has provided additional documents.
Among them are copies of Fairfield Sentry subscription applications as well as a confirmation of
receipt for an application with Trincastar listed as subscriber. (Longo Decl., Ex. 3–6, ECF No.
108). The subscription application forms executed on behalf of Trincastar acknowledge having
read and received the Fairfield Sentry Information Memorandum. (*Id.*) The subscriber
applications and confirmation directs subscribers to wire transfer funds into a New York bank
account in order to purchase shares in Fairfield Sentry.

The information memorandum from January 1, 1999, states that Fairfield Sentry "will
seek to achieve capital appreciation of its assets by allocating its assets to an account at Bernard
L. Madoff Investment Securities ('BLM'), a registered broker-dealer in New York, New York,
which employs an options trading strategy described as 'split strike conversion.'" (Longo Decl.,

*DRAFT*

Ex. 15).  The information memorandum goes on to state that "the Manager[2] has established a

discretionary account for Sentry at Bernard L. Madoff Investment Securities ('BLM'), a

registered broker-dealer in New York, New York . . . " and that "[a]ll investment decisions in the

account at BLM are effected by persons associated with BLM."  (*Id.*)  The document continues:

"BLM acts as a principal in connection with its sale of assets to the Company[3] and the purchase

of securities from the Company.  BLM acts as a market-maker in the stocks purchased and sold

by the Company.  These market-making activities enable BLM to trade with the Company as

principal."  (*Id.*)  The document also advises Defendant that Fairfield Greenwich Limited and

Fairfield Sentry Limited maintains offices in New York.  (*Id.*)

     The additional evidence shows that Trincastar used a New York bank account to receive

the redemption payments at issue.  (Longo Decl., Exs. 16–17).   Where a defendant chooses to

use a United States bank account to received funds, exercising personal jurisdiction over the

defendant for causes of action relating to those transfers is constitutional.  *Off. Comm. of

Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 71 (S.D.N.Y. 2016);

*Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank B.S.C.(C))*, 640 B.R. 604, 618

(S.D.N.Y. 2022) (stating that a bank submits to personal jurisdiction in the United States when it

is "free to accept or reject the proposed terms" and still chooses to use a United States bank

account); *see also Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219, at *6–7

(S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based solely on

defendant's use of New York account to receive payment at issue: "receiving Plaintiffs' money

at a New York bank account suffices to establish personal jurisdiction over [Defendant].");  *HSH

Nordbank AG N.Y. Branch v. Street*, No. 11 CIV. 9405 DLC, 2012 WL 2921875, at *4

---

[2] "Manager" is defined as "Fairfield Greenwich Limited" in the information memorandum.
[3] "Company" is defined as "Fairfield Sentry Limited" in the information memorandum.

*DRAFT*

(S.D.N.Y. July 18, 2012) ("District courts in this Circuit have upheld personal jurisdiction based upon a defendant's use of a correspondent bank account in New York where the use of that account was held to lay at the very root of the plaintiff's action.") (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 66 (2d Cir. 2012).); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp.2d 374, 382–83 (S.D.N.Y. 2013) (same).

The Complaint contains allegations that are legally sufficient to constitute a prima facie showing of jurisdiction. *Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013). "[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Defendant "intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 506 (Bankr. S.D.N.Y. 2012). Defendant's alleged contacts with New York are not random, isolated, or fortuitous.

**Arise out of or relate to the defendant's forum conduct**

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017, 1026, 209 L. Ed. 2d 225 (2021) (emphasis in original). "[P]roof that a plaintiff's claim came about because of the defendant's in-state conduct" is not required. *Id.* at 1027. Instead, the court need only find "an affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not

*DRAFT*

unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury.") (internal quotations omitted).

Here, the Trustee is asserting subsequent transfer claims against Defendant for monies it received from the Fairfield Sentry.  (Compl. ¶¶ 39–40, ECF No. 1).  These allegations are directly related to their investment activities with BLMIS via Fairfield Sentry.  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) (finding that the redemption and other payments the defendants received as direct investors in a BLMIS feeder fund arose from the New York contacts such as sending subscription agreements to New York, wiring funds in U.S. dollars to New York, sending redemption requests to New York, and receiving redemption payments from a Bank of New York account in New York, and were the proximate cause of the injuries that the Trustee sought to redress).

The suit is affiliated with the alleged in-state conduct.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

**Reasonableness**

Having found sufficient minimum contacts, the Court must determine if exercising personal jurisdiction over Defendant is reasonable and "comport[s] with fair play and substantial justice."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (internal quotations omitted).  Factors the Court may consider include the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.  *Id.* at 477.

*DRAFT*

The exercise of jurisdiction is reasonable. Defendant is not burdened by this litigation. Defendant actively participated in this Court's litigation for over ten years. It is represented by U.S. counsel, held bank accounts in New York, and "irrevocably" submitted to the jurisdiction of New York courts' when it signed subscription agreements with the Fairfield Funds.[4]  (Compl. ¶ 5). The forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court. *Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard v. Chais (In re BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich Grp., (In re Fairfield Sentry Ltd.*), 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re Picard*, 917 F.3d 85, 103 (2d Cir. 2019) ("The United States has a compelling interest in allowing domestic estates to recover fraudulently transferred property.").

By alleging that Defendant intentionally invested in BLMIS, the Trustee has met his burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS. And by alleging that Defendant used a New York bank account, the Trustee has met his burden of alleging jurisdiction over each transfer that received through that New York bank account. As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going." *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019). The

---

[4] Even though this Court held that the Defendant's consent to jurisdiction in New York courts contained in the subscription agreements it signed prior to investing with Fairfield Sentry could not be used as the sole basis for this Court's exercise of personal jurisdiction over an action by foreign liquidators to recover redemption payments under British Virgin Island law, the fact that Defendant agreed to submit to the jurisdiction of this Court is certainly a relevant factor in determining whether the exercise of jurisdiction over Defendant is reasonable. *In Fairfield Sentry v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Case No. 10-13164 (SMB), Adv. No. 10-03496 (SMB), 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("Defendants' consent to the Subscription Agreement does not constitute consent to personal jurisdiction in the U.S. Redeemer Actions."), *aff'd*, *Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 3644436, at *9 (S.D.N.Y. Aug. 24, 2022).

*DRAFT*

Trustee has made a prima facie showing of personal jurisdiction with respect to all of the

Fairfield Funds subsequent transfers at issue in this Complaint.

**12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (cleaned up). The claim is facially plausible when a plaintiff pleads facts

that allow the Court to draw a "reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,'

but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an

agreement does not impose a probability requirement at the pleading stage; it simply calls for

enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal

agreement."). In deciding a motion to dismiss, the Court should assume the factual allegations

are true and determine whether, when read together, they plausibly give rise to an entitlement of

relief. *Iqbal*, 556 U.S. at 679. "And, of course, a well-pl[ed] complaint may proceed even if it

strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very

remote and unlikely." *Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as

other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

particular, documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

(2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] .

. . documents incorporated in it by reference[,]" and other documents "integral" to the complaint.

*DRAFT*

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted).  A

document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous

information and relied on it in framing the complaint.  *DeLuca v. AccessIT Grp., Inc.*, 695 F.

Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

 Pursuant to § 550(a) of the Bankruptcy Code, a trustee is entitled to recover avoided

transfers of customer property from initial transferees as well as from "any immediate or mediate

transferee of such initial transferee."  11 U.S.C. § 550(a).  "To plead a subsequent transfer claim,

the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent

transferee of that initial transferee, that is, that the funds at issue originated with the debtor."

*Picard v. BNP Paribas S.A. (In re BLMIS),* 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); *see also*

*SIPC v. BLMIS (In re Consol. Proc. On 11 U.S.C. § 546(e))*, No. 12 MC 115, 2013 WL

1609154, at *7 (S.D.N.Y. Apr. 15, 2013).  "Federal Civil Rule 9(b) governs the portion of a

claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a

claim to recover the subsequent transfer."  *BNP Paribas*, 594 B.R. at 195 (*citing Sharp Int'l

Corp. v. State St. Bank & Trust Co., (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005).

 The Trustee only needs to provide "a short and plain statement of the claim showing that

the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The plaintiff's burden at the pleading

stage does not require exact accounting of the funds at issue.  *BNP Paribas*, 594 B.R. at 195.

Rather "[t]he plaintiff must allege the necessary vital statistics – the who, when, and how much –

of the purported transfers to establish an entity as a subsequent transferee of the funds."  *Id.*

"However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar

accounting of the exact funds at issue."  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R.

167, 195 (Bankr. S.D.N.Y. 2018).

*DRAFT*

While the Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry is avoidable, he is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees. *IBT Int'l Inc. v. Northern (In re Int'l Admin Servs., Inc.)*, 408 F.3d 689, 706-07 (11th Cir. 2005). The Trustee is free to pursue any of the immediate or mediate transferees, and nothing in the statute requires a different result. *IBT Int'l, Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 706-07 (11th Cir. 2005).

The Trustee is seeking to recover subsequent transfers made to Trincastar by Fairfield Sentry.

**The Safe Harbor does not bar the avoidance of the Fairfield Initial Transfers**

Defendant has raised the "safe harbor" defense, found in § 546(e), to the Trustee's allegations. Section 546(e) is referred to as the safe harbor because it protects a transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial institution [or] financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract." 11 U.S.C. § 546(e).

The safe harbor "is an affirmative defense, but it can be raised in the context of a motion to dismiss if the complaint and other documents that the Court can consider establish it and 'where the facts are not in dispute, or where there is already a sufficiently detailed factual record to decide whether the applicable statutory definitions are met, such that the application of Section 546(e) presents a straightforward question of statutory interpretation of the type that is appropriately resolved on the pleadings.'" *Halperin v. Morgan Stanley Inv. Mgmt.* (*In re Tops Holding II Corp.*), No. 18-22279 (RDD), Adv. No. 20-08950 (RDD), 2022 WL 6827457, at *9 (Bankr. S.D.N.Y. Oct. 12, 2022) (quoting *Bankr. Estate of Norkse Skogindustrier ASA v. Cyrus Capital Partners*, 629 B.R. 717, 759 (Bankr. S.D.N.Y. 2021)). "By its terms, the safe harbor is a

*DRAFT*

defense to the avoidance of the *initial* transfer. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis added). Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here, the subsequent transferee is entitled to raise a § 546(e) defense against recovery of those funds. *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021).

On the issue of the safe harbor, the Court adopts the district court's reasoning in: *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022).

The Trustee has alleged that Fairfield Sentry knew the payments it received from BLMIS were neither settlement payments nor payments in connection with a securities contract. "The safe harbor was intended, among other things, to promote the reasonable expectations of legitimate investors. If an investor knew that BLMIS was not actually trading securities, he had no reasonable expectation that he was signing a contract with BLMIS for the purpose of trading securities for his account. In that event, the Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the full extent permitted under state and federal law." *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021)).

The district court determined that "those defendants who claim the protections of Section 546(e) through a Madoff Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss the Trustee's claims on this ground must be denied." *SIPC*

*DRAFT*

*v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013

WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013 *see also Picard v. Multi-Strategy Fund Ltd.* (*In re*

*BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022) ("[I]n

circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e)

d[oes] not apply as a matter of its express terms.").

      This Court is powerless to reconsider this issue, agrees with the district court's reasoning,

and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second

Circuit. *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*),

773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that

BLMIS was actually engaged in the business of effecting securities transactions, have every right

to avail themselves of all the protections afforded to the clients of stockbrokers, including the

protection offered by § 546(e).").

      This Court has already determined that the Fairfield Complaint contains sufficient

allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule

12(b)(6) motion. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv.

No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he Trustee

has alleged that the agents and principals of the Fairfield Funds had actual knowledge of

Madoff's fraud"). In that adversary proceeding, the Court held that "[t]he Trustee has pled

[actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's

fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the

Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; *see also* Fairfield

Compl. ¶ 320 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); Fairfield Compl.

¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at

*DRAFT*

BLMIS"); Fairfield Compl. ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS");

Fairfield Compl. ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); Fairfield

Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶

325 ("FG Bermuda had actual knowledge of the fraud at BLMIS"); ¶ 326 ("FG Advisors had

actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 327 ("Fairfield International

Managers had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 328 ("FG Capital

had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 329 ("Share Management had

actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 9 ("It is inescapable that FGG

partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the

result of the split strike conversion strategy (the 'SSC Strategy'). They knew BLMIS's equities

and options trading volumes were impossible. They knew that BLMIS reported impossible, out-

of-range trades, which almost always were in Madoff's favor. They knew Madoff's auditor was

not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an

independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options

counterparties. They knew their clients and potential clients raised numerous due diligence

questions they would not and could not satisfactorily answer. They knew Madoff would refuse to

provide them with honest answers to due diligence questions because it would confirm the

details of his fraud.  They knew Madoff lied about whether he traded options over the counter or

through the exchange. They knew they lied to clients about BLMIS's practices in order to keep

the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's

direction.").

        "In sum, if the Trustee sufficiently alleges that the [initial] transferee from whom he

seeks to recover a fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim

*DRAFT*

the protections of Section 546(e)'s safe harbor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021). This Court determined that the Fairfield Complaint is replete with allegations demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021). The Trustee's allegations in the Fairfield Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue.

Defendant raises *Fairfield III* in support of their argument that the safe harbor should bar these claims. *Fairfield Sentry Ltd. V. Theodoor GGC Amsterdam* (*In re Fairfield Sentry Ltd.*), No. 10-13164 (SMB), 2020 WL 7345988, at *5 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*"), *aff'd sub nom. Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022). In *Fairfield III*, this Court applied the safe harbor to redemption payments made by Fairfield Sentry to its shareholders. *Fairfield III* is inapplicable in this case for two reasons. First, and most obviously, *Fairfield III* is a holding in Fairfield Sentry's chapter 15 case, which is not binding on the Court in this adversary proceeding; whereas the district court's decision in *SIPC v. BLMIS (In re Consolidated Proceedings on 11 U.S.C. § 546(e))*, No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013), which holds that the safe harbor does not apply in this case, is binding on the Court on this issue. Second, the issue in *Fairfield III* is not comparable. In *Fairfield III*, the Court found that the plaintiffs had not met their pleading burden because the complaint stated that Fairfield Sentry did **not** have knowledge of BLMIS' fraud and the plaintiffs were not permitted to amend their complaints. *Fairfield III*, 2020 WL 7345988, at *9 (Bankr. S.D.N.Y. Dec. 14, 2020) ("[T]he Citibank Complaint **_alleges_** that the [Fairfield] Funds were duped,

*DRAFT*

believing that their BLMIS investments were worth what the BLMIS monthly statements

showed. The Funds were the transferors and if they were duped, they could not have intended to

'hinder, delay or defraud' the Funds' other creditors by redeeming investments at prices they

believed to be accurate.") (emphasis added).  In *Fairfield III*, Fairfield Sentry was the initial

transferor, not the initial transferee as it is here.  And the Court did not rule on whether the

"knowledge exception" to the safe harbor applied.  Here, the Trustee has sufficiently plead

Fairfield Sentry's actual knowledge that BLMIS was not trading securities.

Whether the safe harbor applies to the initial transfers under the theory that BLMIS'

transfers to Fairfield Sentry were made in connection with Fairfield Sentry's contracts with

Trincastar (rather than Fairfield Sentry's contract with BLMIS) is not answerable on the

pleadings.  If such a fact-specific determination is needed, the Court will make it with the benefit

of a "full factual record."  *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-06502

(JSR), 2022 WL 16647767, at *24 (S.D.N.Y. Nov. 3, 2022).

**The Safe Harbor cannot be used to defeat a subsequent transfer**

The safe harbor cannot be used to prevent the Trustee from avoiding the subsequent

transfer between Fairfield Sentry and Defendant on account of the securities contracts between

Fairfield Sentry and Defendant.

The safe harbor is not applicable to subsequent transfers.  "By its terms, the safe harbor is

a defense to the avoidance of the *initial* transfer."  *Picard v. BNP Paribas S.A. (In re BLMIS)*,

594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e)

(failing to include § 550 in its protections).  Since there must be an initial transfer in order for the

Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe

harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned.  The

*DRAFT*

safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not

"avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the

subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the

recovery claims under section 550." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167,

197 (Bankr. S.D.N.Y. 2018).

Defendant's reliance on *Cohmad*, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013), is

unavailing. In *Cohmad*, Judge Rakoff laid out the requirement for recovery of a fraudulent

transfer from a subsequent transferee: "the Trustee must first show that the initial transfer of that

property by the debtor is subject to avoidance under one of the Bankruptcy Code's avoidance

provisions (e.g., 11 U.S.C. §§ 544, 547 & 548)." *Id.* This requirement is subject to a rule

allowing a subsequent transferee to raise a Section 546(e) defense "even if the initial (or

mediate) transferee fails to raise a Section 546(e) defense." *Id.* There is "one caveat" to this

rule: "to the extent that an innocent customer transferred funds to a subsequent transferee who

had actual knowledge of Madoff Securities' fraud, that subsequent transferee cannot prevail on a

motion to dismiss on the basis of Section 546(e)'s safe harbor." *Id.* As Judge Rakoff explained,

this caveat follows from the general principles of recovery: "[a] defendant cannot be permitted to

in effect launder what he or she knows to be fraudulently transferred funds through a nominal

third party and still obtain the protections of Section 546(e)." *Id.* (citing *In re Int'l Admin. Servs.,

Inc.*, 408 F.3d 689, 707 (11th Cir.2005)).

Judge Rakoff has further clarified the inapplicability of the safe harbor to transfers such

as those made to Trincastar. *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-

06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022) ("[*Cohmad*] simply concluded

that, in circumstances in which a transferee was complicit in Madoff Securities' fraud, Section

*DRAFT*

546(e) did not apply as a matter of its express terms."). Where Section 546(e) does not "embrace the initial transfer, the subjective knowledge of a subsequent transferee cannot retroactively render it applicable." *Id.* To the extent that Defendant seeks to apply Section 546(e) to a transfer made in connection with a securities contract between it and the Fairfield Funds not involving BLMIS, this issue is "fact-intensive" and better addressed at a later stage of litigation. *Id.* *8.

### Conclusion

For the foregoing reasons, Defendant's motion to dismiss is denied. The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



**Dated: February 21, 2023**
**Poughkeepsie, New York**

/s/ Cecelia G. Morris
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**